1  MAXWELL C AGHA
   BANKER'S HILL LAW FIRM APC
2  160 Thorn Street, Suite 200
   San Diego, California 92103
3  ~~ Deaquino8@Gmail.com
   Telephone   (619) 230-0330
4  Facsimile   (619) 230-1726

5  maxwellagha@sbcGloballonet.

6  Attorney for Plaintiff Frontera Television Network
   LLP
7

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11         EASTERN DIVISION - RIVERSIDE COURTHOUSE

12

13  FRONTERA TELEVISION            ED CV 12 - 00920 VAP
    NETWORK LLP                )   Case No.
14                             )   (DTBx)
              Plaintiff,       )
15                             )   COMPLAINT FOR:
         vs.                   )
16                             )
                               )   1.   RICO – 18 U.S.C. § 1962(c);
17  Alejandro Carrillo Garza Sada; GM )   2.   RICO – 18 U.S.C. § 1962 (d);
    Global S. A. de CV; Erwin Lino; )   3.   FRAUD;
18  David Lopez; Roberto Calleja; Hugo )   4.   BREACH OF FIDUCIARY
    Vigues; Alfredo/Carrillo        )        DUTY;
19  Chontkowsky; Jose Carrillo       )   5.   NEGLIGENT
    Chontkowsky; Alejandro Ramirez   )        MISREPRESENTATION;
20  Gonzalez; SISA S. A. De CV; Manuel )   6.   INJUNCTIVE RELIEF;
    Gascon; Jiramos S.A. de C.V. and )   7.   BREACH OF CONTRACT
21  Does 1 through 100, inclusive    )
                               )
22            Defendants.      )   (Jury Trial Demanded)
                               )
23  _____)

24      Plaintiff, Frontera Television Network LLP, (the "Plaintiff"), by and through it's

25  undersigned attorney, for it's Complaint in this action, hereby alleges against

26  Defendants' Alejandro Carrillo Garza Sada; GM Global S. A. de CV; Erwin Lino; David

27  Lopez; Roberto Calleja; Hugo Vigues; Alfredo/Carrillo Chontkowsky; Jose Carrillo

28  Chontkowsky; Alejandro Ramirez Gonzalez; SISA S. A. De CV; Manuel Gascon;

1   Jiramos S.A. de C.V. and Does 1 through 100 on personal knowledge as follows:

2   **INTRODUCTION**

3   1.    This action is filed by the victims of a conspiracy to provide television

4   network to advertise in the United States for PRI campaign for the political presidential

5   candidacy of Enrique Pena Nieto.  Pursuant to meetings between the parties, a contract

6   was entered into on November 28, 2011, between the parties for political advertising

7   campaign for PRI candidate.  On November 28, 2011,  Defendants executed the contract

8   to obtained funding from the Mexican government to advertise in the United States for

9   PRI campaign for the political presidential candidacy of Enrique Pena Nieto.

10  Defendants' and each of them converted the funds for their own private use.

11  Defendants' and each of them refused to pay for the advertising campaign for PRI

12  candidate Enrique Pena Nieto.  Defendants' and each of them concealed the fact that

13  they converted the advertising funds for their own private and personal use.   The

14  defendants - Alejandro Carrillo Garza Sada; GM Global S. A. de CV; Erwin Lino; David

15  Lopez; Roberto Calleja; Hugo Vigues; Alfredo/Carrillo Chontkowsky; Jose Carrillo

16  Chontkowsky; Alejandro Ramirez Gonzalez; SISA S. A. De CV; Manuel Gascon;

17  Jiramos S.A. de C.V. - are the perpetrators of a fraudulent conspiracy and the members

18  of a racketeering enterprise with the object of converting campaign funds for their

19  personal use, and denying plaintiff from receiving it's just benefits from the written

20  contract in the way of that objective.

21  2.    Plaintiff Frontera Television Network LLP is a Nevada Limited Liability

22  Partnership.

23  3.    Defendant, Alejandro Carrillo Garza Sada met with Frontera Television

24  Network LLP through it's authorized agent Jose Aquino in November of 2011, Mr. Jose

25  Aquino, is the owner and President of Frontera Television Network, and Jose Aquino

26  was invited by Alejandro Carrillo Garza Sada to meet Pepe Carrillo and Alfredo Carrillo

27  Chontkosky at a breakfast at the Café de la O del Conjunto Arcos, and Jose Aquino was

28  presented with a project to disseminate the image and positioning of the Lic. Enrique

1  Peña Nieto, the candidate of the PRI to the Presidency of the Republic, through

2  spectacular, magazines, radio, television, Internet and social networks to be operated in

3  the United States of America, using the structure and relations of Frontera Television

4  Network LLP through it's authorized agents with the media in the United States, project

5  for which Frontera Television Network LLP through it's authorized agents subsequently

6  design a media Plan, for an amount of us $56 million US Dollars, being agreed under the

7  terms and conditions of the parties to the contract dated November 28, 2011.    Mario

8  Ignacio Moran Jimenez had his sister Giselle Moran to meet with Frontera Television

9  Network LLP through it's authorized agents in November of 2011, Jose Aquino was

10  invited to meet Pepe Carrillo at a breakfast at the Café de la O del Conjunto Arcos, and

11  Jose Aquino was presented with a project to disseminate the image and positioning of the

12  Lic. Enrique Peña Nieto, the candidate of the PRI to the Presidency of the Republic,

13  through spectacular, magazines, radio, television, Internet and social networks to be

14  operated in the United States of America, using the structure and relations of Frontera

15  Television Network LLP through it's authorized agents with the media in the United

16  States, project for which Frontera Television Network LLP through it's authorized

17  agents subsequently design a Media Plan, for an amount of us $56 million US Dollars,

18  being agreed to under the terms and conditions of the parties to the transaction.

19  Defendant, Alejandro Carrillo Garza Sada through Giselle Moran sister of Mario Ignacio

20  Moran Jimenez  all were the negotiators, as a matter of fact Mario Ignacio Moran

21  Jimenez  personally never was mentioned it was at all  times his sister Giselle Moran and

22  her company defendant, GM Global S. A. and defendant, Alejandro Carrillo Garza Sada

23  who did all of the negotiating with the PRI.  Money was funded to Monex Bank,  Banca

24  Mifel in Virreyes Alicama 5 Mexico City to the account of Jiramos S.A C.V, defendants

25  withdrew the money and split the money with the PRI Officials and their co-conspirators

26  David Lopez, Erwin Lino, Alfredo/Pepe Carrillo Chontkosky, Roberto Callejas, Hugo

27  Vigues and Luis Videgaray and never Funded the project as was promise.  Defendants

28  used Plaintiff's American companies to justify a bonafide transaction, Plaintiff Frontera

1  Television Network LLP through it's authorized agents contacted the PRI officials -

2  David Lopez, Edwing Lino, Roberto Callejas, Alfredo Carrillo, and Jose Carrillo and

3  Plaintiff Frontera Television Network LLP through it's authorized agents were threaten

4  by it being stated that the money that was originated was funded  from companies owned

5  by drug cartels and it was further stated that Jose Aquino must be very careful not to

6  make any noise or his life is in danger.

7         4.      At the same time, defendants', Alejandro Carrillo Garza Sada, GM Global

8  S. A. de CV, Erwin Lino; David Lopez, Roberto Calleja, Hugo Vigues, Alfredo/Carrillo

9  Chontkowsky, Jose Carrillo Chontkowsky, Alejandro Ramirez Gonzalez, SISA S. A. De

10  CV, Manuel Gascon and Jiramos S.A. de C.V., had secretly determined that they will use

11  plaintiff's American companies to convert campaign funds for their personal use, and

12  denying plaintiff from receiving it's just benefits from the written contract dated

13  November 28, 2011.  As part of that plan, the defendants and others acting with them

14  made numerous fraudulent misrepresentations to plaintiff Frontera Television Network

15  LLP through it's authorized agents and concealed numerous material facts from plaintiff,

16  Frontera Television Network LLP through it's authorized agents which helped to induce

17  plaintiff Frontera Television Network LLP through it's authorized agents to entering into

18  the written contract dated November 28, 2011.  As a condition to make a payment of $15

19  million US dollars as advance payment for the realization of the project, defendant,

20  Alejandro Carrillo Garza Sada decided that on January 6, 2012, that he will enter into

21  another contract between "Intellimedia" and SISA, a company dedicated to providing

22  services to the agricultural sector, property of Mr. Alejandro Ramirez Gonzalez, General

23  Director of the Confederation of Porcicultores of Mexico, who entered into a contract

24  with defendant Alejandro Carrillo Garza Sada  and who assumed the responsibility to

25  pay plaintiff Frontera Television Network LLP through it's authorized agents, as well as

26  monitor the implementation of the project in the United States of America, turning the

27  purchase orders where specified in a manner clear with and accurate, means, amounts,

28  squares and markets to cover, as well as ways to do recruitment and testing of

1 investments (billing), that was designed to enrich defendant, Alejandro Carrillo Garza

2 Sada, GM Global S. A. de CV, Erwin Lino; David Lopez, Roberto Calleja, Hugo Vigues,

3 Alfredo/Carrillo Chontkowsky, Jose Carrillo Chontkowsky, Alejandro Ramirez

4 Gonzalez, SISA S. A. De CV, Manuel Gascon and Jiramos S.A. de C.V., and others who

5 were acting in concert with them.

6                                    **JURISDICTION AND VENUE**

7        5.       The Court has subject matter jurisdiction over this action pursuant to 18

8 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

9        6.       This action arises under the laws of the United States, in particular, the

10 Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

11       7.       The Court has supplemental jurisdiction over the state law claims for relief

12 pursuant to 28 U.S.C. § 1367(a), since these claims arise from a common nucleus of

13 operative facts and are so intertwined with the federal claims for relief as to make an

14 exercise of the Court's jurisdiction appropriate.

15       8.       Venue is proper under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b).

16       9.       Defendants are subject to the personal jurisdiction of this Court inasmuch

17 as they are located in Mexico and have purposefully availed themselves of the privileges

18 of doing business in California with regard to the actions alleged herein, and such

19 jurisdiction is reasonable.

20       10.      Venue is proper in this district because 1) Plaintiff does business within the

21 Eastern District of California; 2) Defendant Alejandro Carrillo Garza Sada resides in

22 Mexico; 3) Defendant GM Global S. A. de CV is an organization conducting business in

23 Mexico; 4) Defendant Erwin Lino resides in Mexico; 5) Defendant David Lopez resides

24 in Mexico; 6) Defendant Roberto Calleja resides in Mexico; 7) Defendant Hugo Vigues

25 resides in Mexico; 8) Defendant Alfredo/Carrillo Chontkowsky resides in Mexico; 9)

26 Defendant Jose Carrillo Chontkowsky resides in Mexico; 10) Defendant Alejandro

27 Ramirez Gonzalez resides in Mexico; 11) Defendant SISA S. A. De CV is an

28 organization conducting business in Mexico; 12) Defendant Manuel Gascon resides in

1  Mexico; 13) Defendant Jiramos S. A. De CV is an organization conducting business in

2  Mexico; 14) a substantial part of the acts complained of occurred in the Eastern District

3  of California and 15) the contract at issue was performed in the Eastern District of

4  California (28 U.S.C. § 1391(b)(2)).

5          11.     Contrary to numerous false representations made to plaintiff Frontera

6  Television Network LLP through it's authorized agents by defendant Alejandro Carrillo

7  Garza Sada; GM Global S. A. de CV; Erwin Lino; David Lopez; Roberto Calleja; Hugo

8  Vigues; Alfredo/Carrillo Chontkowsky; Jose Carrillo Chontkowsky; Alejandro Ramirez

9  Gonzalez; SISA S. A. De CV; Manuel Gascon; Jiramos S.A. de C.V. by and through

10  Giselle Moran who was acting as the personal representative and agent for Mario Ignacio

11  Moran Jimenez, from the beginning of Alejandro Carrillo Garza Sada and their co-

12  conspirators involvement with Enrique Pena Nieto's media candidacy Campaign, he and

13  his co-conspirators including defendant Alejandro Ramirez engaged in a scheme that had

14  as its object the conversion of campaign funds from the candidate of the PRI to the

15  Presidency of the Republic, so that defendant Alejandro Carrillo Garza Sada and his co-

16  conspirators could  justify converting the campaign funds from the candidate of the PRI

17  to the Presidency of the Republic, for their own private and personal use and these funds

18  where later to have been discovered to being reported as being supplied by companies

19  owned by the drug cartel.   The conduct by the Defendants that effectively destroyed the

20  economic viability of the campaign for the candidate for the PRI for the Presidency of

21  the Republic included converting the campaign funds from the candidate of the PRI to

22  the Presidency of the Republic, for their own private and personal use and stating to

23  Frontera Television Network LLP through it's authorized agent that the money that was

24  originated was funded  from companies owned by drug cartels and it was further stated

25  that Jose Aquino must be very careful not to make any noise or his life is in danger,

26  thereby,  abandoning agreed-upon financial plans for the campaign for the candidate for

27  the PRI for the Presidency of the Republic, and undermining a planned recapitalization

28  of the campaign that would have added new respectful contributors.

1        12.    Between October 2011 and 2012, defendants continued to make numerous

2    false representations and material omissions to Plaintiff Frontera Television Network

3    LLP through it's authorized agents as they carried out their plans to convert campaign

4    funds received by the companies owned by the drug cartel from drug activities and

5    remove plaintiff Frontera Television Network LLP from standing in the way of that

6    objective.   As a result, plaintiff Frontera Television Network LLP have received nothing

7    from their work, while defendants' having allowed plaintiff Frontera Television Network

8    LLP through it's authorized agents to use their American Companies to make the

9    campaign successful in the United States of America.  This dilution gave defendants' the

10   power to dispose of the candidate for the PRI for the Presidency of the Republic and thus

11   carry out the objective of defendants' conspiracy.

12       13.    Upon information and belief, in or about October 2011, Francisco Torrez

13   invited plaintiff Frontera Television Network LLP through it's authorized agents to meet

14   PRI official Alejandro Carrillo Garza Sada, Mario Ignacio Moran Jimenez, Giselle

15   Morgan, Alfredo Carrillo, Jose Carrillo, David Lopez and Roberto Calleja, all

16   represented to plaintiff Frontera Television Network LLP through it's authorized agents

17   to be PRI representatives running Candidate EPN campaign for president of Mexico,

18   after plaintiff Frontera Television Network LLP through it's authorized agents offered a

19   package of $15,000,000 US dollars, defendants' decided to increase the amount to

20   $56,000,000 US dollars, after the parties agreed, within the next 5 days the parties

21   proceeded to sign all agreements.   Plaintiff Frontera Television Network LLP  with

22   Jiramos and Mario Ignacio Moran Jimenez for GM Global S. A. De CV.  Jiramos was

23   represented by Alejandro Carrillo Garza Sada and  GM Global S. A. De CV was

24   represented by Giselle Moran and her brother Mario Moran in which both were

25   contracting and signing the main contract as representatives agents between  Frontera

26   Television Network LLP and PRI officials ( David Lopez, Edwin Lino, Alfredo Carrillo,

27   Jose Carrillo, Hugo, and Roberto Calleja within approximately 15 days all the parties met

28   and agreed to all of the terms and conditions and they all met at a notary office and

execute the written agreement, within two weeks after money was funded by David Lopez and Edwin Lino to Alejandro Carrillo Garza Sada company Jiramos, defendants' informed plaintiff Frontera Television Network LLP through it's authorized agent that in order to make all of this legal that they wanted to exchange the existing agreement for a new agreement, Frontera Television Network LLP through it's authorized agentwas forced to sign the supplemental written agreement and signed the second agreement were Jiramos was not going to fund money to Frontera Television Network LLP but rather defendants' asked Jose Aquino the agent for Frontera Television Network LLP to bring a new company known as Intellimedia LP and then defendants had Jose Aquino to sign the new agreements under Intellimedia LP and from defendants' side they brought a new company call  SISA The National Association of Porcicultores and Agriculture.  The written agreements were signed, defendants' signed the agreement as well, and promised to provide funding in the amount of $5,000,000 US Dollars by April 1, 2012, notwithstanding this never happened and since then defendants' all changed their email addresses and also changed their cell phone numbers and they all hiding and refuses to answer any telephone calls from plaintiff Frontera Television Network LLP through it's authorized agents or their attorney.

14.    Upon information and belief, plaintiff believe that  SISA is also a government entity and plaintiff believes that SISA is well involved with the acts complained of herein.  Plaintiff believes that SISA was a party to the fraud because the SISA had no intention to pay plaintiff for the use of it's American Companies but only agreed to do so in order to justify the money to be withdrawn from sponsors and from the State of Mexico to pay for illegal interviews that were not allowed by IFE.   Upon information and belief, plaintiff believe that the IFE is also a government entity that regulates campaign money.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15.     Upon information and belief, plaintiff believe that all funds where funded to Alejandro Carrillo Garza Sada at his Monex Bank and Mifel Bank, then defendant Alejandro Carrillo Garza Sada split the funds with Giselle Moran, David Lopez, Erwin Lino, Alfredo/Pepe Carrillo Chontkowsky,  Roberto Calleja and Hugo Vigues.

16.     Plaintiff Frontera Television Network LLP through it's authorized agents sent an attorney to talk to Edwin Lino, Alfredo Carrillo, David Lopez, Jose Carrillo and Roberto Calleja, and even have exchanged emails and plaintiff Frontera Television Network LLP through it's authorized agent was threaten by it being said that this money was contributed by companies owned by drug cartels and that Jose Aquino should be very careful not to make any noise or his life will be in danger.

17.     All of the defendants thus attained their mutual goal of carrying out a scheme to deprive plaintiff Frontera Television Network LLP of their labor.   The defendants also attained their goal of converting the campaign funds from the candidate of the PRI to the Presidency of the Republic, for their own private and personal use and stating to Jose Aquino that the money that was originated was funded by companies belonging to the drug cartel from drugs and for Jose Aquino to be very careful and not to make any noise or his life is in danger, thereby, abandoning the agreed-upon financial plans for the campaign for the candidate for the PRI for the Presidency of the Republic, and undermining a planned recapitalization of the campaign that would have added new respectful contributors.

18.     This Complaint alleges claims against defendants Alejandro Carrillo Garza Sada; GM Global S. A. de CV; Erwin Lino; David Lopez; Roberto Calleja; Hugo Vigues; Alfredo/Carrillo Chontkowsky; Jose Carrillo Chontkowsky; Alejandro Ramirez Gonzalez; SISA S. A. De CV; Manuel Gascon; Jiramos S.A. de C.V., under both the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), and applicable state law.

///

///

1    19.    Plaintiff Frontera Television Network LLP through it's authorized agents
2  seek redress for their injuries, including compensatory damages, which are tripled under
3  RICO, and punitive damages in an amount no less than US $100 million.   In addition,
4  this action seeks a constructive trust over the campaign for the candidate for the PRI for
5  the Presidency of the Republic, and injunctive relief prohibiting the contraction, for any
6  new campaign advertising for the PRI for the Presidency of the Republic.

7                                **THE PARTIES**

8  **Plaintiffs**

9    19.    Plaintiff Frontera Television Network LLP is a Limited Liability
10 Partnership formed and organized under the Laws of the State of Nevada with it's
11 principal place of business in San Diego County, and San Bernardino County California.
12 Plaintiff Frontera Television Network LLP has its managing partner address of 711 S.
13 Carson Street Suite 4, Carson City NV 89701.   The agent for service of process is
14 Resident Agents of Nevada, Inc., located at 711 S. Carson Street Suite 4, Carson City
15 NV 89701.

16 **Defendants**

17    20.    Plaintiff Frontera Television Network LLP through it's authorized agent is
18 informed and believe and based thereon alleges that 1) Defendant Alejandro Carrillo
19 Garza Sada resides in Mexico; 2)  Defendant GM Global S. A. de CV is an organization
20 conducting business in Mexico; 3)  Defendant Erwin Lino resides in Mexico; 4)
21 Defendant David Lopez resides in Mexico; 5) Defendant Roberto Calleja resides in
22 Mexico; 6) Defendant Hugo Vigues resides in Mexico; 7) Defendant Alfredo/Carrillo
23 Chontkowsky resides in Mexico; 8) Defendant Jose Carrillo Chontkowsky resides in
24 Mexico; 9) Defendant Alejandro Ramirez Gonzalez resides in Mexico; 10)  Defendant
25 SISA S. A. De CV is an organization conducting business in Mexico; 11) Defendant
26 Manuel Gascon resides in Mexico; 12) Defendant Jiramos S. A. De CV is an
27 organization conducting business in Mexico.

28 ///

1       21.   The Defendants conduct business in this District through their operation of

2   the Plaintiff Frontera Television Network LLP for the purpose of  providing television

3   network to advertise in the United States of America for PRI campaign for the political

4   presidential candidacy of Enrique Pena Nieto.  Pursuant to meetings between the parties,

5   a contract was entered between the parties for political advertising campaign for PRI

6   candidate.  Defendants authorized the execution of a contract to obtained funding from

7   the Mexican government to advertise in the United States for PRI campaign for the

8   political presidential candidacy of Enrique Pena Nieto.  Defendants, upon information

9   and belief, also maintain residences in Mexico.

10       22.   The ill-gotten gains of the Defendants include the sum of $56,000,000

11   Million US Dollars of campaign funds which were intended to be used for advertisement

12   throughout the United States of America for PRI campaign for the political presidential

13   candidacy of Enrique Pena Nieto.

14       23.   The conduct of defendants alleged in this Complaint took place, in

15   material part, in this District. including through fraudulent misrepresentations made by

16   the Defendants in this District.

17                                 **FACTUAL ALLEGATIONS**

18   **The History Of The Contract**
    **The Plan To Advertise in The United States**

19

20       24.   In November of 2011, Mr. José Aquino, owner and President of Frontera

21   Television Network, was invited by Mr. ALEJANDRO CARRILLO GARZA SADA to

22   meet Mr. PEPE CARRILLO at a breakfast at the Café de la O del Conjunto Arcos, who

23   presented a project to disseminate the image and positioning of the Lic. Enrique Peña

24   Nieto, then candidate of the PRI to the Presidency of the Republic, through spectacular,

25   magazines, radio, television, Internet and social networks to be operated in the United

26   States of America, using the structure and relations of Mr. Aquino with the media in the

27   United States, project for which he was asked and subsequently design a Media Plan, for

28   an amount of $56 million US dollars, the terms and conditions being agreed and the

1    amounts being agreed to by the parties to the contract.  A true and correct copy of the

2    contract is attached as Exhibit "A" and is incorporated herein by this reference.

3            25.    In the same month, in a subsequent meeting, it was introduced by the

4    CARRILLO brothers (ALFREDO AND PEPE) Mr. HUGO BIJES, who was presented

5    as a person close to one of the key characters to authorize the funding for the project and

6    resources at the express request of the Mr. Alejandro Carrillo Garza Sada, Mr. José

7    Aquino, in good faith and as was agreed and it was required, delivered on time and

8    efficiently to Mr. Alejandro Carrillo, documents (incorporation, powers, copies of IDs,

9    etc) that accredit reliably the veracity of his person as well as the truthfulness, solvency

10   and prestige of their companies, same as Mr. ALEJANDRO CARRILLO used along

11   with his company JIRAMOS, S.A. DE C.V., for the award of the project, carrying out

12   subsequent meetings with some people who said to be members of the campaign with the

13   objective to know and to refine the draft, who include Mr. EDWIN LINO, DAVID

14   LOPEZ, ROBERTO CALLEJAS and GUSTAVO LOMELIN, those who know of the

15   project and were participating in the same, to a greater or lesser extent.

16           26.    Mr Alejandro Carrillo reported that he already had done business

17   previously with the PRI (mention several sales of t-shirts), and therefore already had

18   business backgrounds, as well as necessary records as a supplier and guarantees that

19   were required by the CARRILLO brothers, for an amount of $900,000, so that argument

20   that it would expedite the award to making it necessary that the award was through his

21   companies and that they would receive the award of the contract.

22           27.    In this tenor, on November 28, 2011, the contract was signed between

23   Frontera Television Network, the company called JIRAMOS, S.A. DE C.V., and a

24   company called GM GLOBAL S. A. De CV MEDIA, owned by Mrs. GISELLE

25   MORAN, a contract for the provision of services, whose purpose would be the hiring of

26   services of development of promotions for the purpose mentioned in this complaint.

27   ///

28   ///

1    28.    Then, Mr. Alejandro Carrillo commented that it was necessary to replace

2  such a contract where Mrs. GISELLE MORAN participated, on the other, who

3  commented that the lady was not well seen by 'friends', so at the suggestion of Mr.

4  Alejandro Carrillo, on or about in December 6, 2011, the contract was cancelled referred

5  to in the previous point and proposed to submit documentation for another  company also

6  owned by Mr. José Aquino, named "Intellimedia", to sign a new contract, only between

7  JIRAMOS and the company of Mr. Aquino.

8    29.    To this end, Mr. Alejandro Carrillo urged the change of the company,

9  because he said he had the funds available, and it was urgent to distribute the funds for

10  not incurring absence to what has been agreed, and that the company would have the

11  time and sufficient resources for book due in advance, best patterns and spaces in media

12  in the USA, for the agreed purpose.

13    30.    For those purposes, of people in the team's campaign, in late December,

14  2011 some people were sent headed by the Mr. GUSTAVO LOMELIN, to know, check

15  and make sure the accuracy, seriousness and existence of the station, so as the prestige,

16  responsiveness and ability to operate the project with the rest of the media that were

17  needed and which were reflected in the proposal.

18    31.    As a condition to make a payment of $15 million US Dollars as advance

19  payment for the realization of the project, Mr. ALEJANDRO CARRILLO decided that

20  on January 6, 2012, will enter into a contract between "Intellimedia" and SISA, a

21  company dedicated to providing services to the agricultural sector, property of Mr.

22  ALEJANDRO RAMIREZ GONZALEZ, General Director of the Confederation of

23  Porcicultores of Mexico, who celebrated a contract with Mr. CARRILLO and who

24  assumed the responsibility to pay Mr. Aquino and his company, as well as monitor the

25  implementation of the project in the United States, turning the purchase orders where

26  specified in a manner clear and accurate, means, amounts, squares and markets to cover,

27  as well as way to do recruitment and testing of investments (billing).

28  ///

32.     In order to provide an immediate resources for the effective implementation of the project, SISA was engaged in the contract referred to in the complaint, to deposit to INTELLIMEDIA, within 5 five days following the signing of the contract, the amount of $15 million, US Dollars as a down payment of the total purchase of advertising for the candidate in the United States.

33.     In compliance with and the signed contract forecast, Intellimedia proceeded to recruit and book time and advertising spaces in United States of America, for the implementation of purchase orders, generating expenditure and commitments for the attainment of the objective which it was requested, notwithstanding Intellimdeia nor Plaintiff received any money from SISA, or Mr. ALEJANDRO CARRILLO as promised.

34.     It is required that Mr. ALEJANDRO CARRILLO GARZA SADA and his partners, to fulfill the contract reference in this complaint as Exhibit "A" and  it has been known that he has received funds, using project contracts and information of companies which in good faith and in accordance with the agreed upon terms and conditions, which were provided by Mr. José Aquino.  Now, some of the partners of Mr. Alejandro Carrillo Garza Sada have already received funds from the project, being the case any breach to Plaintiff, has caused damages both economic and commercial relationship and requiring Plaintiff to get it's name, it's prestige and it's companies before the media, that because of  Mr. Alejandro Carrillo Garza Sada representations Plaintiff relied on him and expects the agreed remuneration.

35.     It is important to acknowledge the people who decide in the campaign, that Mr. ALEJANDRO CARRILLO and partners, used without any modesty, the names of key characters in the environment of the candidate, and refer to them as part of the business, and as those preventing them to fulfill the contract, to point out that they have not received instruction to do so, already he has mentioned, that it will not have any money, if not authorized to, being the case, that his act of irresponsibility, could result in a situation of risk and make these events transcend beyond what is necessary.

36.     Since it has been already more than five months that the project was agreed and knowing that the resources are in concentrated account of Mr. ALEJANDRO CARRILLO and given the repeated breaches of payment and cancellations of meetings without justification and that seem that some of the people whom Mr. Carrillo refers as his "partners" in the project (friends) have already received resources, Mr. José Aquino has pointed out, that he would be willing to wait for an answer which will be final in this matter until the 4 Day of May 2012, as otherwise, it could terminate this stage of seeking a friendly and convenient solution for all, and you could see the need of having to activate legal actions, research, civil, or criminal prosecution.

## RICO ALLEGATIONS

37.     Plaintiffs are "persons" within the meaning of 18 U.S.C. § 1964(c).

38.     At all times relevant hereto, plaintiffs and the defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

39.     The following persons, and others presently unknown, have been members of and constitute an "enterprise" within the meaning of RICO, which plaintiff collectively refer to as the  "United States for PRI campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise": (1) Alejandro Carrillo Garza Sada; (2) GM Global S. A. de CV; (3) Erwin Lino; (4) David Lopez; (5) Roberto Calleja; (6) Hugo Vigues; (7) Alfredo/Carrillo Chontkowsky; (8) Jose Carrillo Chontkowsky; (9) Alejandro Ramirez Gonzalez; (10) SISA S. A. De CV; (11) Manuel Gascon; and (12) Jiramos S.A. de C.V.

40.     The United States for PRI campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise is an ongoing enterprise, which engages in and whose activities affect, interstate and international commerce. The United States for PRI campaign for the political presidential candidacy of Enrique Pena Nieto continues to operate in Mexico, and there is a continuing threat of criminal activity until the United States for PRI campaign for the political presidential candidacy of Enrique Pena Nieto

1  Enterprise has accomplished its goal of converting campaign funds for it's own private
2  and personal use including funds contributed by drug cartels.

3      41.     While the defendants participate in the enterprise and are a part of
4  it, the defendants also have an existence separate and distinct from the enterprise.

5      42.     Defendants conduct or participate in the conduct of the United States for
6  PRI campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise's
7  affairs through a pattern of racketeering activity.

8      43.     Defendants' participation in the United States for PRI campaign for the
9  political presidential candidacy of Enrique Pena Nieto Enterprise is necessary for the
10  successful operation of defendants' scheme.

11      44.     The enterprise has an ascertainable structure separate and apart from the
12  pattern of racketeering activity in which the defendants engage. The United States for
13  PRI campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise
14  operated and operates with two related structures, one of which is headed by Alejandro
15  Carrillo Garza Sada (with Erwin Lino and others as his subordinates), and the
16  other of which is headed by David Lopez (with Roberto Calleja and others as his
17  subordinates).  The structure operated by Mr. Alejandro Carrillo Garza Sada was and is
18  subordinate to David Lopez who acted on behalf of the SISA S. A. De CV.

19  **Predicate Acts**

20      45.     The numerous predicate acts of mail and wire fraud described herein are
21  part of the fraudulent schemes by defendants designed to perpetrate a scheme in the
22  United States for PRI campaign for the political presidential candidacy of Enrique Pena
23  Nieto Enterprise.

24      46.     Section 1961 (1) of RICO provides that "racketeering activity" is any act
25  indictable under any of the provisions of Title 18, United States Code § 1341 (relating to
26  mail fraud), § 1343 (relating to wire fraud), and § 1346 (relating to scheme or artifice to
27  defraud).

28  ///

1

2

3

4

47.     In carrying out the overt acts and fraudulent schemes described above, the defendants engaged in, among other things, conduct in violation of federal laws, including 18 U.S.C. §§ 1341, 1343, and 1346, 18 U.S.C. § 1952(a), and 18 U.S.C. § 1961 et seq.

5

6

7

8

9

48.     Examples of the predicate acts committed by defendants pursuant to their scheme in the United States for PRI campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise include those set forth above in paragraphs 1, 3-4, 11-19, 21-23,  and 24-36. Upon information and belief, there have been numerous other predicate acts by defendants that are presently unknown to plaintiff.

10

**Mail And Wire Fraud**

11

12

13

14

15

16

49.     For the purpose of executing and/or attempting to execute their scheme to defraud plaintiff by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the Postal Service, and received matter and things therefrom, including but not limited to agreements, correspondence, faxes, and other materials.

17

18

19

20

21

50.     For the purpose of executing and/or attempting to execute their scheme to defraud plaintiff by means of false pretenses, representations or promises, the defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things therefrom, including but not limited to agreements, correspondence, faxes, and other materials.

22

23

24

25

26

51.     In those matters and things sent or delivered by the Postal Service, by wire, and through other interstate and international electronic media, defendants falsely and fraudulently misrepresented and/or fraudulently concealed material facts from plaintiff, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to those acts set forth above in Paragraphs  1, 3-4, 11-19, 21-23,  and 24-36.

27

///

28

///

1    52.    As a result, plaintiff have been injured in it's business or property by the

2    defendants' overt acts and racketeering activities.

3    **Pattern of Racketeering Activity**

4    53.    As set forth herein, the defendants have engaged in a "pattern of

5    racketeering activity," as defined in 18 U.S.C. § 1961(5), by committing and/or

6    conspiring to commit at least two such acts of racketeering activity, as described herein,

7    within the past two years.   Defendants have committed multiple acts of racketeering

8    activity within such period.  Each such act of racketeering activity was related, had

9    similar purposes, involved the same or similar participants and methods of commission,

10   and had similar results impacting upon similar victims, including plaintiff.

11   54.    The multiple acts of racketeering activity committed and/or conspired to

12   commit by defendants, as described above, were related to each other and amount to and

13   pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of

14   racketeering activity," as defined in 18 U.S.C. § 1961(5).

15

16                          **COUNT I**

17                   **RICO -- 18 U.S.C. § 1962(c)**

18                     **(against all defendants)**

19   55.    The plaintiff incorporate and reallege the previous paragraphs as if fully set

20   forth herein.

21   56.    Section 1962(c) of RICO provides that "[i]t shall be unlawful for any

22   person employed by or associated with any enterprise engaged in, or the activities of

23   which affect, interstate or foreign commerce, to conduct or participate, directly or

24   indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering

25   activity or collection of unlawful debt."

26   57.    Through the patterns of racketeering activities outlined above, the

27   defendants have conducted and participated in the affairs of the United States for PRI

28   campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise's

1    affairs through a pattern of racketeering activity.

2        58.    As a direct and proximate result of defendants' illegal conduct in violation

3    of 18 U.S.C. § 1962(c), plaintiff have been injured in it's business or property, including,

4    but not limited, by:

5            (a)    the theft,  lost value, conversion of funds of plaintiff ownership

6                interests in the money earned for Tele-media;

7            (b)    the lost profits plaintiff would have achieved but for defendants'

8                unlawful conduct;

9            (c)    the damage to plaintiff's businesses that has occurred as a result of

10                the pending contract; and

11            (d)    the harm to plaintiff's goodwill that has occurred as a result of the

12                pending contract.

13        59.    With respect to their violations of 18 U.S.C. § 1962(c), defendants have

14    acted at all times with malice toward plaintiff, and with the specific intent to commit the

15    predicate acts alleged herein and to participate in the affairs of the United States for PRI

16    campaign for the political presidential candidacy of Enrique Pena Nieto Enterprise's

17    affairs through a pattern of racketeering activity.

18

19                            **COUNT II**

20                    **RICO -- 18 U.S.C. § 1962(d)**

21                        **(against all defendants)**

22        60.    Plaintiff incorporate and reallege the previous paragraphs as if fully set out

23    herein.

24        61.    This claim seeks relief for the defendants' activities described herein for

25    violations of 18 U.S.C. § 1962(d), for conspiring to violate 18 U.S.C. § 1962(c).

26        62.    Section 1962(d) of RICO provides that "[i]t shall be unlawful for any

27    person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this

28    section."

1
2

63.     Absent defendants' conspiracy and joint efforts, defendants' fraudulent enterprise would not be successful.

3
4
5
6
7
8
9
10
11
12

64.     Defendants have violated § 1962 (d) by conspiring to violate 18 U.S.C. § 1962(c).  The object of this conspiracy has been and is to engaged in a scheme that had as its object the conversion of campaign funds from the candidate of the PRI to the Presidency of the Republic, so that defendant Alejandro Carrillo Garza Sada and his co-conspirators could  justify converting the campaign funds from the candidate of the PRI to the Presidency of the Republic, for their own private and personal use and these funds where later to have been discovered to being reported as being supplied by companies owned by the drug cartel and to conduct and/or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) enterprise described above through a pattern of racketeering activity.

13
14

65.     Defendants and their agents have been joined in their conspiracies to violate 18 U.S.C. § 1962( c) by various third parties not named as defendants herein.

15
16
17
18

66.     Defendants agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962 (c), and agreed to commit overt acts and predicate acts, as alleged in this Complaint, to effectuate that conspiracy.  Defendants were aware that their acts were part of an overall pattern of racketeering activity.

19
20
21
22

67.     As a direct and proximate result of the defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), plaintiff have been and is continuing to be injured in it's business or property as described above in Paragraph 58.

23     ///
24     ///
25     ///
26     ///
27     ///
28     ///

# COUNT III

## Fraud

## (against all defendants)

68.     Plaintiff incorporate and reallege the preceding paragraphs as if fully set out herein.

69.     As set forth in Paragraphs 1, 3-4, 11-19, 21-23,  and 24-36 above, the Defendants and/or their representatives knowingly and fraudulently made numerous false statements to plaintiff and/or it's representatives, and knowingly and fraudulently concealed numerous material facts from plaintiff and it's representatives, concerning various events related to the campaign funds from the candidate of the PRI to the Presidency of the Republic and plaintiff interests in labor therein, including but not limited to the following:

   (a)   representations by the Defendants and/or their representatives during the period from at least October 2011 to May 2012 that Plaintiff would receive the sum of $5,000,000 US Dollars for services rendered to keep the campaign alive;

   (b)   representations by the Defendants and/or their representatives during the period from October 2011 through May 2012 that Defendants intended to tender to Frontera Television Network LLP the sum of $5,000,000 US Dollars under the terms and conditions of the contract;

   (c)   representations by the Defendants and/or their representatives during the period from October 2011 to May 2012 that Defendants would comply with the contract as agreed;

   (d)   representations by the Defendants and/or their representatives during the period from the October 2011 through May 2012 in which they intentionally misrepresented and concealed the material fact that Defendants had no intention to pay Fronetra Television

1    Network LLP for it's services pursuant to the contract;

2    70.    Defendants made such false statements and omissions without legal

3    justification or excuse, with malice, ill will and/or with the intent to purposely

4    defraud plaintiff.

5    71.    Plaintiff justifiably relied upon, and was deceived by, the fraudulent

6    statements by, and material omissions of, defendants.

7    72.    Plaintiff have been injured as a result of the fraudulent statements by, and

8    material omissions of, defendants, as described above in Paragraph 69.

9    **COUNT IV**

10    **Breach of Fiduciary Duty**

11    **(against defendants Alejandro Carrillo Garza Sada and SISA S. A. De CV)**

12    73.    Plaintiff incorporate and reallege the preceding paragraphs as if fully set

13    out herein.

14    74.    Defendant Alejandro Carrillo Garza Sada and SISA S. A. De CV by virtue

15    of their position in the distribution of the campaign funds and the responsibilities they

16    hold in those positions, at all relevant times owed a fiduciary duty to plaintiff, which the

17    contract was designed to benefit for an exchange for services for the benefit of the

18    campaign.

19    75.    Defendants Alejandro Carrillo Garza Sada and SISA S. A. De CV, each,

20    individually and collectively, owed a fiduciary duty to the plaintiff pursuant to the

21    contract to insure that Plaintiff would receive the benefit of the contract pursuant to it's

22    terms and conditions. These defendants owed plaintiff a fiduciary duty because these

23    defendants all held, and still hold, positions of trust, confidence, and responsibility, and

24    are empowered to bind the campaign for general business matters, and these duties must

25    be undertaken by these defendants with a view towards the best interest of, among the

26    other campaign advertisement participants, including plaintiff.

27    ///

28    ///

1      76.    As set forth in Paragraphs 1, 3-4, 11-19, 21-23, and 24-36 above,

2   Defendants repeatedly breached those duties to plaintiff, including but not limited to

3   through the commission of the following acts:

4              (a)    representations by Mr. Alejandro Carrillo Garza Sada and/or their

5                     representatives during the period from at least October 2011 to May

6                     2012, in which they falsely stated that they will tender to plaintiff

7                     the sum of $5,000,000 US Dollars by April 1, 2012 pursuant to the

8                     contract, when in fact they intended to tender to plaintiff the sum of

9                     $5,000,000 US Dollars by pursuant to the contract.

10     77.    Defendants Alejandro Carrillo Garza Sada and SISA S. A. De CV

11   have engaged in acts that were designed to further their own personal interests in

12   achieving the conversion of the campaign funds for their own personal use, as part of an

13   overall contraction scheme, at the expense of plaintiff to whom they owed a fiduciary

14   duty.

15     78.    Plaintiff have been severely injured as a result of the breaches of

16   fiduciary duty by Defendants Alejandro Carrillo Garza Sada and SISA S. A. De CV, as

17   described above in Paragraph 76.

18

19                                **COUNT V**

20                        **Negligent Misrepresentation**

21                          **(against all defendants)**

22     79.    Plaintiff incorporate and reallege the preceding paragraphs as if fully set

23   out herein.

24     80.    Defendants by virtue of their positions in the campaign and the

25   responsibilities they hold in the campaign, at all relevant times owed a fiduciary duty to

26   plaintiff, who was hired by defendants to perform services at defendants request and

27   directions.

28   ///

1        81.    Defendants and each of them stood in a special relationship of trust,

2  confidence and responsibility in their obligation to plaintiff, such that plaintiff's reliance

3  on the representations of these persons was justified.

4        82.    As set forth in Paragraphs 1, 3-4, 11-19, 21-23,  and 24-36 above,

5  Defendants failed to speak with care in making representations and omissions of material

6  facts, which those defendants intended plaintiff would rely upon, including the

7  following:

8               (a)    representations by defendant Alejandro Carrillo Garza Sada and/or

9                       their representatives during the period from at least October 2011 to

10                     May 2012, in which they falsely stated that they would tender to

11                     plaintiff the sum of $5,000,000 US Dollars for services performed

12                     in connection with the campaign, when in fact they intended not to

13                     ever pay plaintiff for it's services.

14        83.    Plaintiff reasonably relied upon the negligent representations and material

15  omissions of the Defendants.

16        84.    Plaintiff have been severely injured as a result of the negligent

17  representations and material omissions by Defendants as described above in Paragraph

18  82.

19                                     **COUNT VI**

20                               **Injunctive Relief**

21                         **(against all defendants)**

22        85.    Plaintiff incorporate and reallege the preceding paragraphs as if fully set

23  out herein.

24        86.    The actions taken by defendants as alleged above and incorporated herein

25  have caused and will continue to cause plaintiff irreparable and immediate injury, loss of

26  money, and damages, for which there is no adequate remedy at law.

27  ///

28  ///

1       87.    Plaintiff have a clear legal right to the relief sought under applicable law,

2   and therefore a likelihood of success on the merits of this action and interest in the

3   subject matter of this lawsuit.

4       88.    No adequate remedy at law exists that can fully protect plaintiff from the

5   damages it will suffer if the defendants are permitted to continue in their behavior and

6   present activities as complained of herein this complaint.

7       89.    To preserve the status quo would not be adverse to the public interest.

8       90.    The balance of the equities favors plaintiff and is in the public interest.

9       91.    The relief sought by the plaintiff is necessary to prevent and restrain the

10  ongoing violations of applicable law as described herein.

11  **COUNT VII**

12  **Breach of Written Contract**

13  **(against all defendants)**

14      92.    Plaintiff incorporate and reallege the preceding paragraphs as if fully set

15  out herein.

16      93.    Plaintiff brings this cause of action to recover damages arising out of the

17  wrongs committed against it by defendants in failing and refusing to perform under the

18  terms and condition of the Contract entered into on November 28, 2011 as well as

19  seeking an order from this court ordering the Specific Performance of the Contract to

20  take immediate affect.

21      94.    After plaintiff attempted to obtain payment from defendant, he discovered

22  that defendants were acting in collusion and designed a scheme not to pay plaintiff

23  pursuant to the terms and conditions of the written contract, notwithstanding the fact that

24  defendants contracted with plaintiff to pay plaintiff the sum of $15,000,000 US Dollars.

25  As a direct and proximate result of the scheme plaintiff is being been damaged in the

26  sum of $15,000,000 US Dollars which amount represents the term and conditions of the

27  contract and what plaintiff will suffer due to the wrongful acts of defendants.

28  ///

1    Plaintiff justifiably relied on the representations of defendant in representing that the

2    defendants will pay plaintiff the sum of $15,000,000 US Dollars as agreed on November

3    28, 2011.

4         95.    The failure and refusal of defendant to perform it's obligations is a breach

5    of contract and plaintiff has suffered damages in an amount according to proof at trial

6    and violations of state and federal law.   Additionally, plaintiff is seeking other

7    compensatory and punitive damages against defendants and against  DOES 1 through

8    100 for fraud, collusion, and the wrongful conduct relating to this contract.

9                          **DEMAND FOR JURY TRIAL**

10        Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby

11   demand a trial by jury as to all issues in this matter.

12   PRAYER FOR RELIEF

13   WHEREFORE, plaintiff demand judgment against defendants as follows:

14        (a)    compensatory damages in an amount to be determined at trial, for

15   defendants' violations of RICO, plus treble damages, attorneys' fees and costs of this

16   action, all provided by statute as a result of defendants' violations of 18 U.S.C. § 1962;

17        (b)    compensatory damages in an amount to be determined at trial, for the

18   frauds committed by the Defendants;

19        (c)    compensatory damages in an amount to be determined at trial, for the

20   Defendants' breaches of fiduciary duty and negligent misrepresentations;

21        (d)    punitive damages in an amount no less than one hundred million U.S.

22   dollars ($100,000,000);

23        (e)    a constructive trust in favor of plaintiff with respect to all campaign funds

24   pending a determination whether the plaintiff is entitled to payments as promised in the

25   contract dated November 28, 2011;

26        (f)    injunctive relief prohibiting any disbursements of any campaign funds

27   pending the hearing on this matter;

28   ///

(g)     for the sum of $5,000,000 US Dollars to be immediately released to plaintiff from the Campaign funds pursuant to the terms of the written contract dated November 28, 2011.

(h)     all costs of this action, including reasonable attorneys' fees; and/or

(i)     such other and further relief as this Court shall deem just and proper.

Dated:  June 5, 2012

Respectfully Submitted:

MAXWELL C. AGHA (SBN 153625)
Attorney for Plaintiff

Complaint for Damages for RICO Violations racketeering enterprise
-27-

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV12- 920 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [X] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| FRONTERA TELEVISION NETWORK LLP | ) |
| | ) |
| *Plaintiff* | ) |
| v. | ) |
| ALEJANDRO CARRILLO GARZA SADA; GM GLOBAL | ) |
| S.A. de CV; (See attached) | ) |
| *Defendant* | ) |

Civil Action No. **ED CV 12 - 00920**

**VAP(DTBX)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> MAXWELL C AGHA
> BANKER'S HILL LAW FIRM APC
> 160 Thorn Street, Suite 200
> San Diego, California 92103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

TERRY NAFISI
*CLERK OF COURT*

L. MURRAY

Date: **JUN -7 2012**

*Signature of Clerk or Deputy Clerk*

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Frontera Television Network LLP v. Alejandro Carrillo Garza Sada | ED CV 12 - 00920 VAP (DTBx) |

INSTRUCTIONS FOR USE

➡ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➡ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Page __2__ of __2__

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.USCourtForms.com

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## CIVIL COVER SHEET

| | |
|---|---|
| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>FRONTERA TELEVISION NETWORK LLP<br><br><br>SAN BERNARDINO COUNTY | DEFENDANTS<br>Alejandro Carrillo Garza Sada; GM Global S. A. de CV; Erwin Lino; David Lopez;<br>Roberto Calleja; Hugo Vigues; Alfredo/Carrillo Chontkowsky; Jose Carrillo<br>Chontkowsky; Alejandro Ramirez Gonzalez; SISA S. A. De CV; Manuel Gascon;<br>Jiramos S.A. de C.V. and Does 1 through 100, inclusive<br>MEXICO |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br>MAXWELL C AGHA, ~~Bgt 153625~~ Telephone (619) 230-0330<br>BANKER'S HILL LAW FIRM APC   Facsimile (619) 230-1726<br>160 Thorn Street, Suite 200<br>San Diego, California 92103 | Attorneys (If Known)<br><br>Unknown |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in this State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

### V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☐ Yes  ☒ No        ☒ MONEY DEMANDED IN COMPLAINT: $ 15,000,000.00

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

RICO -- 18 U.S.C. Section 1962(c) RICO -- 18 U.S.C. Section 1962(d) Breach of Contract and Breach of Fiduciary Duty

### I. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 310 Airplane | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 530 General | |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Fed. Employers' Liability | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☒ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

ED  CV  12 - 00920  VAP  (DTBx)

FOR OFFICE USE ONLY:   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Frontera Television Network LLP doing business in SAN BERNARDINO COUNTY | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Alejandro Carrillo Garza Sada; GM Global S. A. de CV; Erwin Lino; David Lopez; Roberto Calleja; Hugo Vigues; Alfredo/Carrillo Chontkowsky; Jose Carrillo Chontkowsky: Alejandro Ramirez Gonzalez; SISA S. A. De CV; Manuel Gascon; Jiramos S.A. de C.V. ALL RESIDES IN MEXICO |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Each work was to be performed in San Bernardino County, California and the contract was signed in Mexico |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   6/6/12

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |